IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

CARLA BRYCE,                              )
                                          )
                    Plaintiff,            )
                                          )
v.                                        )     Case No. CIV-06-775-D
                                          )
TRACE, INC.,                              )
                                          )
                    Defendant.            )

## O R D E R

Before the Court is the Motion for Summary Judgment of Defendant Trace, Inc., which seeks

a judgment as a matter of law pursuant to Fed. R. Civ. P. 56 on claims brought by Plaintiff Carla

Bryce under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e *et seq.*[1]

Plaintiff has timely opposed the motion, and Defendant has filed a reply brief.  The motion is thus

at issue.

### A.      Standard of Decision

Summary judgment is appropriate if the pleadings, affidavits, depositions, and evidence on

file "show that there is no genuine issue as to any material fact and that the moving party is entitled

to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  A fact is material if it is essential to the

proper disposition of a claim under controlling law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986).  An issue is genuine if the evidence is such that a rational trier of fact could resolve the

issue either way. *See id.*  All facts and inferences must be viewed in the light most favorable to the

non-moving party. *Id*. at 255.  If a party who would bear the burden of proof at trial lacks sufficient

---

[1]  The Complaint contained claims under the Age Discrimination in Employment Act, 29
U.S.C. § 621 *et seq*., which Plaintiff has abandoned. *See* Pl.'s Resp. Br. [Doc. 17] at 1, n.2.

evidence on an essential element of a claim, then all other factual issues concerning the claim become immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Celotex*, 477 U.S. at 322-23. If the movant carries its initial burden, the nonmovant must then "set forth specific facts" outside of the pleadings that would be admissible in evidence and that show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(2). "The burden is not an onerous one for the nonmoving party in each case, but does not at any point shift from the nonmovant to the district court." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998). Although a district court has the discretion to go beyond referenced portions of the supporting material, it is not required to do so. *Id.* Here, the Court declines to shoulder Plaintiff's burden of advocacy.

## B.      Statement of Material Facts[2]

Plaintiff, who is female, was hired by Defendant in March, 2003, to work on the grounds at Tinker Air Force Base as part of a litter crew. Plaintiff's assigned job was to drive a truck on a designated route to pick up trash; she typically completed her route two or three times per day. Plaintiff traveled with a partner, Stephanie Hixson. They were the only females of approximately

---

[2] Defendant states numerous alleged facts in narrative form in its brief under the heading, "Statement of Case." This statement consists of unnumbered paragraphs and contains no citations to the record. Facts appearing only in this statement are disregarded due to noncompliance with Local Civil Rule LCvR56.1(b). Similarly, although Plaintiff states in her response brief that she disputes certain numbered paragraphs of Defendant's statement of facts, she fails properly to controvert these facts with references to the portion of the record that justifies her opposition. The Court deems admitted pursuant to Local Civil Rule LCvR56.1(c), all facts presented by Defendant that are not properly opposed by Plaintiff. Facts presented by Plaintiff in her response brief with proper support as required by Fed. R. Civ. P. 56(e)(1) are considered in ruling on Defendant's motion and, if unopposed by Defendant in its reply brief, are included in the above statement of facts, if relevant to the issues. Facts stated by Plaintiff without any citation to the record, or by reference to evidentiary materials that do not support the stated fact, are disregarded.

75 employees who worked on outside crews performing trash pick-up, mowing and weed-trimming. Plaintiff was supervised by an assistant project manager named David Niles; the parties dispute whether she was also supervised by an assistant project manager named Robert Duvall.[3]

In early 2005, base officials notified Defendant of alleged deficiencies in its performance of the service contract and warned Defendant that immediate improvements were needed to retain the contract. In March, 2005, Defendant responded by assigning a quality control inspector, Dave Cury, to assess and improve operations. On May 25, 2005, Plaintiff sent an electronic message to Defendant's home office in Boise, Idaho, regarding problems in the workplace; Plaintiff complained Mr. Cury was making false accusations about her work performance, had "harassed [her] since May 13," and had embarrassed and insulted her in front of coworkers. *See* Def.'s Mot. Summ. J. [Doc. 16], Ex. 7. In this lawsuit, Plaintiff also complains that Mr. Cury made her wait to use the women's restroom, prohibited her from eating lunch at a Burger King restaurant, yelled at Plaintiff one morning to "get out" of the shop, restricted her work breaks, and "would nitpick" her work. *See* Pl.'s Resp. Br. [Doc. 17] at 3-4, ¶¶ 15, 17-19; Bryce Dep. 205:7-14, 212:18-213:12. Mr. Cury allegedly did not treat male employees under his supervision in the same way. Also, according to Plaintiff, Mr. Cury gave preferential treatment to a male employee, Johnny Miller (discussed below), with regard to a work rule that all employees were required to wear safety vests.

---

[3] Defendant contends Mr. Duvall did not directly supervise Plaintiff and his employment was terminated in April, 2005, before the events about which Plaintiff complains in this case. For these reasons, and because Plaintiff has submitted a declaration of Mr. Duvall that allegedly contains conclusory statements, Defendant urges the Court to disregard Mr. Duvall's testimony. However, Mr. Duvall states facts within his personal knowledge concerning the workplace and individuals involved in this case within one month, at most, before Plaintiff's alleged difficulties began. Whether Mr. Duvall's testimony is credible, and whether he describes interpersonal conflicts and management policies that remained in place at the time of Plaintiff's termination, are issues for determination by the trier of fact. Solely for purposes of Defendant's motion, the Court assumes that specific facts stated by Mr. Duvall are true.

During Plaintiff's employment, Defendant employed Mr. Miller as a crew leader.[4] Mr Miller did not supervise Plaintiff, but he did not like her and spoke about her to Mr. Duvall using gender-based profanity.  Mr. Miller once commented to Mr. Duvall that Defendant "did not need women working out here," referring to outside labor crews.[5]  *See* Pl.'s Resp. Br. [Doc. 17] at 2; Ex. 2, Duvall Decl. ¶ 8.  On June 2, 2005, Mr. Miller and Plaintiff had a confrontation in which, according to Plaintiff, Mr. Miller yelled and cursed at her for refusing to take direction from him, called her a bitch, and threatened to "f****ing write [her] ass up and get [her] fired."  *See* Pl.'s Resp. Br. [Doc. 17], Ex. 1, Bryce Dep. at 234:4-5.  No one else was present at the time; Mr. Cury was called to the scene to address the problem.  On the same date, Plaintiff drafted a document regarding the incident and the alleged "hostile environment in the workplace;" Plaintiff wrote she felt verbally abused, intimidated, and "sexual [sic] harassed (male verses [sic] female)."  *See* Pl.'s Resp. Br. [Doc. 17], Ex. 6 at 7 (unnumbered).  Plaintiff delivered the document to her union representative as a written complaint.  Plaintiff also complained verbally to Mr. Niles on other occasions that Mr. Miller was following her and accusing her of not doing her work.

On June 10, 2005, Plaintiff received an electronic message from the home office regarding her May 25, 2005, message; she was instructed to follow the chain of command and address her concerns to Mr. Cury.  On June 11, 2005, Plaintiff responded that Mr. Cury had failed to resolve her problem with Mr. Miller and that she felt there was a "hostile environment" and females at work were being harassed.  *See* Pl.'s Resp. Br. [Doc. 17], Ex. 7.

---

[4]  The parties do not explain the work duties of this position.

[5]  There is no indication that Plaintiff heard these comments or was otherwise aware of them during her employment.

Plaintiff's employment was covered by a collective bargaining agreement and Defendant's sick leave policy, under which employees accrued sick leave benefits at the rate of one-half day per month of service. An employee also received two weeks of vacation per year; vacations had to be scheduled in writing 30 days in advance. Defendant also permitted employees to be absent on unpaid leave under certain circumstances, which are disputed. The collective bargaining agreement allowed Defendant to request a doctor's note after an employee's absence for illness. The parties dispute whether Defendant's policy was for employees to provide a doctor's note after missing two days of work, three days of work, or anytime a supervisor chose to request one.

As of June 27, 2005, Plaintiff had missed 16 days of work in 2005. Plaintiff left work early due to illness on June 22, 2005, and was absent from work on June 23 and 24, 2005. She returned to work on June 26 or 27, 2005, and was terminated effective June 27, 2005.[6] Upon her return, Mr. Niles asked Plaintiff for a doctor's note, and she told him she did not have to provide one. With its motion, Defendant has presented a "termination form" completed by Mr. Niles that states: "[Plaintiff] is terminated for unexcused absence and failure to provide verification of illness." *See* Def.'s Mot. Summ. J. [Doc. 16], Ex. 11 (citations to collective bargaining agreement omitted). Based on this document and Plaintiff's attendance records, Defendant argues in its opening brief that Plaintiff's termination was due to excessive absences or absenteeism, *see* Def.'s Mot. Summ. J. [Doc. 16] at 20. Plaintiff points out in response, however, that Mr. Niles during his deposition

---

[6] Defendant makes conflicting statements that Plaintiff returned to work on Monday, June 27, 2005, but that she was terminated on June 26, 2005; Plaintiff states the date of her return and termination was June 26, 2005. *See* Def.'s Mot. Summ. J. [Doc. 16] at 10-11, ¶¶ 26, 29; Pl.'s Resp. Br. [Doc. 17] at 7, ¶ 37. Plaintiff's time sheets show she generally worked only on weekdays. *See* Def.'s Mot. Summ. J. [Doc. 16], Ex. 9-10. The termination document plainly states a termination effective date of June 27, 2005; it appears to bear a date of signature by Mr. Niles on June 24, 2005. *See* Def.'s Mot. Summ. J. [Doc. 16], Ex. 11.

characterized the reason for Plaintiff's termination as "insubordination" because she refused to provide a doctor's note. *See* Pl.'s Resp. Br. [Doc. 17], Ex. 4, Niles Dep. 30:11-15. Defendant agrees in its reply brief that Plaintiff was terminated for insubordination. *See* Def.'s Reply Br. [Doc. 18] at 8, ¶ 40.

The parties dispute whether Plaintiff had been warned of an attendance problem before May, 2005, when the events giving rise to this lawsuit began. Plaintiff presents documents produced by Defendant in discovery that purport to show Plaintiff had received verbal and written discipline or counseling concerning her absences, but she denies having received such discipline and suggests these documents are false. There is conflicting evidence concerning Defendant's policies and procedures for employee discipline. Plaintiff presents facts to show lax enforcement of workplace rules allegedly violated by male employees, including rules prohibiting the use of profanity and the use of drugs. In addition, Plaintiff presents evidence that Defendant employed persons who had prior drug addictions or habits and who allegedly were allowed to miss work but retain their positions.

### C.     **Defendant's Motion for Summary Judgment**:

Defendant seeks summary judgment on all claims. First, Defendant seeks judgment on Plaintiff's sexual harassment claim because the facts allegedly fail to show sufficiently severe or pervasive gender-based conduct to prove the existence of a hostile work environment. Second, Defendant seeks judgment on Plaintiff's claims that her termination was motivated by gender discrimination, and by retaliation for her complaints of sexual harassment, because she allegedly cannot establish that Defendant's asserted reason for the decision is pretextual.

**D.      Plaintiff's Claim of Sexual Harassment**

Title VII prohibits subjecting an employee to a hostile work environment.  "To establish a sexually hostile work environment existed, a plaintiff must prove the following elements: (1) she is a member of a protected group; (2) she was subject to unwelcome harassment; (3) the harassment was based on sex; and (4) due to the harassment's severity or pervasiveness, the harassment altered a term, condition, or privilege of the plaintiff's employment and created an abusive working environment."  *Dick v. Phone Directories Co., Inc.*, 397 F.3d 1256, 1262-63 (10th Cir. 2005) (internal quotation omitted); *see  Harsco Corp. v. Renner*, 475 F.3d 1179, 1186 (10th Cir. 2007).[7] By its motion, Defendant asserts that Plaintiff cannot establish either the third or forth elements of her claim.

The critical issue in determining whether harassment is based on sex "is whether members of one sex are subjected to a disadvantage to which the other sex is not."  *Harsco*, 475 F.3d at 1186; *see Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998).  With regard to the conduct in this case, the inference that Mr. Miller's alleged harassment of Plaintiff was based on sex is easy to draw.  Plaintiff has presented evidence that Mr. Miller verbally attacked her using a gender-specific, derogatory term that conveys hostility towards women.  *E.E.O.C. v. PVNF, L.L.C.*  487 F.3d 790, 799 (10th Cir. 2007) (characterizing bitch "as a 'sexual epithet[ ]' that courts have described as 'intensely degrading'" and evidence of gender animus).  A0s to Mr. Cury's alleged harassment, Plaintiff has presented facts to show that he treated men and women differently in the workplace and subjected female employees to stricter rules than he applied to male employees.  This is an accepted evidentiary route to proving that his conduct was because of Plaintiff's gender.  *See*

---

[7] In addition, a plaintiff must identify a basis for holding the employer liable for the alleged harassment.  Neither party acknowledges this fifth element, and thus, the Court does not address it.

*Harsco*, 475 F.3d at 1186.   Under the totality-of-circumstances approach, even gender-neutral conduct considered in context can provide evidence of gender-based harassment.   *See Harsco*, 475 F.3d at 1187 (animal noises, baby noises, and name-calling by coworkers directed only at a female employee could be considered); *see also Chavez v. New Mexico*, 397 F.3d 826, 833 (10th Cir. 2005) ("Conduct that appears gender-neutral in isolation may in fact be gender-based, but may appear so only when viewed in the context of other gender-based behavior.").   Here, the Court finds that Plaintiff has demonstrated a genuine factual issue with regard to the third element of her sexual harassment claim.

As to the fourth element, the court of appeals has explained the severity or pervasiveness requirement as follows:

> "For a hostile environment claim to survive a summary judgment motion, a plaintiff must show that a rational jury could find that the workplace [was] permeated with discriminatory intimidation, ridicule, and insult, that [was] sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."   *Penry v. Fed. Home Loan* [*Bank*], 155 F.3d 1257, 1261 (10th Cir.1998) (quotation omitted).   To evaluate whether a working environment is sufficiently hostile or abusive, we examine all the circumstances, including: (1) the frequency of the discriminatory conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's work performance.   *Harris v. Forklift Sys., Inc.*[,] 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).   In addition, the environment must be both subjectively and objectively hostile or abusive.   *Id.; see also Davis v. U.S. Postal Serv.*, 142 F.3d 1334, 1341 (10th Cir.1998).

*Mackensie v. City of Denver*, 414 F.3d 1266, 1280 (10th Cir. 2005); *see Harsco*, 475 F.3d at 1187. Supreme Court precedents teach "that simple teasing, offhand comments, and isolated incidents (unless extremely serious)" are insufficient.   *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotation omitted).   The fact-finder must "judge the objective severity of the harassment from the perspective of a reasonable person in the plaintiff's position, considering all

the circumstances." *Harsco*, 475 F.3d at 1187; *see Oncale*, 523 U.S. at 81; *Harris v. Forklift*

*Systems, Inc.*, 510 U.S. 17, 21 (1993).  As noted above, in making this judgment under the totality

of circumstances, both overtly gender-discriminatory conduct and facially neutral abusive behavior

may be considered in determining whether severe and pervasive harassment occurred.  *See Chavez*,

397 F.3d at 833; *O'Shea v. Yellow Tech. Servs., Inc.*, 185 F.3d 1093, 1097 (10th Cir. 1999).

In this case, Plaintiff attempts to satisfy the requisite standard with sweeping arguments

about verbal abuse and profanity by unspecified male employees, routine use of gender-based

epithets by Mr. Miller, and "pervasive acts of intimidation, profanity, stereotypical comments,

. . . yelling and nitpicking" by Mr. Miller and Mr. Cury.  *See* Pl.'s Resp. Br. [Doc. 17] at 9, 10.

However, distilling from Plaintiff's argument facts that are properly supported in the manner

required by Rule 56, and viewing those facts most favorably to her, Plaintiff relies on the following

facts to establish a hostile work environment claim:[8]  (1) Plaintiff worked in a predominantly male

workforce and was supervised by men; (2) Mr. Miller verbally assaulted Plaintiff on one occasion

using gender-based profanity;[9] (3) Mr. Cury "nitpicked" Plaintiff's work, once yelled at her to "get

out," limited her breaks, and restricted her from eating lunch at Burger King, without giving similar

treatment to men; and (4) Defendant did not promptly investigate or take any disciplinary action on

---

[8] The court of appeals has emphasized "the special importance of bringing supportive facts to the attention of the district court in an employment discrimination case.  Because of the sheer volume of the record in such cases, a party cannot expect the district court to comb the record and make the party's case for it."  *Fye v. Oklahoma Corp. Comm'n*, No. 06-6307, 2008 WL 509371, *4 (10th Cir. Feb. 27, 2008) (to be published) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir.1998)).

[9] Plaintiff argues that Mr. Miller was a "management" employee.  However, she provides no factual support for this characterization of his "crew leader" position and, instead, has presented evidence that he had no supervisory, or management, authority over her.

her sexual harassment complaint.  The offensive conduct allegedly spanned a time period from early

May, 2005, until Plaintiff's termination in late June, 2005.

After careful consideration, the Court finds Plaintiff has failed to make a sufficient showing

from which reasonable jurors could find Plaintiff was subjected to conduct that, viewed objectively,

was severe or pervasive enough to create an abusive working environment.  The record makes clear

that Plaintiff subjectively perceived the alleged harassment as abusive.  Also, a reasonable person

in Plaintiff's position could view the verbal attack by Mr. Miller on June 2, 2005, as severe; he used

offensive language, including a "sexual epithet that courts have described as intensely degrading,"

and threatened Plaintiff's job.  *See PVNF*, 487 F.3d at 799 (internal quotation omitted).  Plaintiff has

pointed to no fact or evidence, however, to show the incident involved any physical contact or

threat, or that she had any other direct contact with Mr. Miller.  Evidence that he spoke about her

in demeaning terms outside of her presence has no bearing on her sexual harassment claim.[10]

Even when combined with Mr. Cury's harsh treatment of Plaintiff, the alleged harassment

could not reasonably be viewed as severe or pervasive enough to alter the conditions of Plaintiff's

employment.  The conduct of which Plaintiff complains occurred for approximately two months

during a period of employment spanning more than two years.  The facts indicate Mr. Cury once

yelled at her; there is no evidence regarding the frequency of his other conduct.  However, the facts

do not suggest Mr. Cury dealt with Plaintiff on a daily basis; Mr. Niles was her direct supervisor.

The nature of Mr. Cury's conduct – yelling at Plaintiff to "get out," finding fault with her work, and

---

[10] Plaintiff "may only rely on evidence relating to harassment of which she was aware during the time that she was allegedly subject to a hostile work environment."  *Hirase-Doi v. U.S. West Commc'ns, Inc*., 61 F.3d 777, 782 (10th Cir. 1995), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998), *and Faragher v. City of Boca Raton*, 524 U.S. 775 (1998).  The records does not show she was aware of other statements before this lawsuit began.

restricting her breaks or lunch choices – cannot reasonably be viewed as conduct that would unreasonably interfere with an employee's work performance. The record presented simply does not show Plaintiff endured a workplace "permeated with discriminatory intimidation, ridicule, and insult." *Harris*, 510 U.S. at 21. Therefore, the Court finds that Defendant is entitled to summary judgment on Plaintiff's claim of sexual harassment.

### E.    Plaintiff's Claims of Gender Discrimination and Retaliation

Because Plaintiff relies on circumstantial proof that her termination was motivated by her gender and retaliation for her complaints of discrimination, Defendant seeks summary judgment under the burden shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). This analysis consist of three steps:

> [T]he plaintiff carries the initial burden of establishing a prima facie case of [gender] discrimination [or retaliation]. Once the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate some legitimate, non-discriminatory reason for the adverse employment action. If the defendant makes this showing, the burden then shifts back to the plaintiff to show that the defendant's proffered justification is pretextual.

*Young v. Dillon Cos.*, 468 F.3d 1243, 1249 (10th Cir. 2006) (discrimination); *see Meiners v. University of Kansas*, 359 F.3d 1222, 1229 (10th Cir. 2004) (retaliation).[11]

--------------------------------------------------

[11]   The elements of a prima facie case of sex discrimination may vary depending on the context of the claim. At the least, "a prima facie case of discrimination must consist of evidence that (1) the victim belongs to a protected class; (2) the victim suffered an adverse employment action; and (3) the challenged action took place under circumstances giving rise to an inference of discrimination." *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007). Here, Plaintiff offers to establish the third element by showing she was a good worker, had not received prior discipline, and was replaced by a man.

For retaliation, "the plaintiff must first establish a prima facie case by showing that (1) she engaged in protected opposition to Title VII discrimination; (2) she suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action." *Meiners*, 359 F.3d at 1229. Here, Plaintiff relies on the temporal proximity between her complaint of sexual harassment and her termination.

In this case, Defendant does not question whether Plaintiff can establish a prima facie case of gender discrimination or retaliation with respect to her termination.  Defendant instead contends it has a legitimate, nondiscriminatory reason for the decision to terminate Plaintiff's employment, namely, insubordination when she was asked to justify her June 22-24 absence due to illness. Because Defendant has produced evidence to support this reason, Defendant has satisfied its evidentiary burden.  *See Reeves v. Sanderson*, 530 U.S. 133, 142 (2000) (the employer's "burden is one of production, not persuasion; it can involve no credibility assessment") (internal quotation omitted).  Thus, the question becomes whether Plaintiff can demonstrate Defendant's reason is pretextual; she bears the burden to prove "that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination [or retaliation]."  *Id*. at 143.

A plaintiff may establish pretext by showing either "that a discriminatory reason more likely motivated the employer or . . . that the employer's proffered explanation is unworthy of credence."

*Texas Dep't Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

> A plaintiff demonstrates pretext by producing evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons."  *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (quoting *Olson v. General Elec. Astrospace*, 101 F.3d 947, 951-52 (3d Cir. 1996)).  Evidence of pretext may include "prior treatment of plaintiff; the employer's policy and practice regarding minority employment (including statistical data); disturbing procedural irregularities (e.g., falsifying or manipulating . . . criteria); and the use of subjective criteria."  *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1217 (10th Cir. 2002) (quoting *Simms v. Oklahoma ex rel. Dept. of Mental Health and Substance Abuse Servs.*, 165 F.3d 1321, 1328 (10th Cir. 1999)).

*Jaramillo v. Colorado Judicial Dep't*, 427 F.3d 1303, 1308 (10th Cir. 2005).

> Although "a plaintiff may not be forced to pursue any particular means of demonstrating that a defendant's stated reasons are pretextual," *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir.2000) (alterations omitted), pretext is typically shown in one of three ways:

> (1) with evidence that the defendant's stated reason for the adverse
> employment action was false; (2) with evidence that the defendant
> acted contrary to a written company policy prescribing the action to
> be taken by the defendant under the circumstances; or (3) with
> evidence that the defendant acted contrary to an unwritten policy or
> contrary to company practice when making the adverse employment
> decision affecting the plaintiff.  A plaintiff who wishes to show that
> the company acted contrary to an unwritten policy or to company
> practice often does so by providing evidence that he was treated
> differently from other similarly-situated employees who violated
> work rules of comparable seriousness.

*Green v. New Mexico*, 420 F.3d 1189, 1193 (10th Cir. 2005) (quoting *Kendrick*, 220 F.3d at 1230);

*see also Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1167-68 (10th Cir. 2007).  "A

similarly situated employee is one who 'deals with the same supervisor and is subject to the same

standards governing performance evaluation and discipline.'"  *Id.* at 1194 (quoting *Kendrick*, 220

F.3d at 1232).

Here, Plaintiff addresses Defendant's reason for her termination – insubordination – only

indirectly, arguing that this is a subjective criterion and inherently suspect.  Plaintiff instead focuses

on the underlying decision by Mr. Niles to require a doctor's note when she returned to work from

a 2.5-day absence.  Plaintiff argues this discretionary decision, which was also subjective and

allegedly made in violation of a 3-day rule, was designed to provide a basis for her termination when

she was not prepared to produce a note upon returning to work.  Plaintiff further contends Defendant

engaged in selective enforcement of its attendance policy and other work rules, failing to impose any

discipline on male employees who violated rules of equal or greater seriousness.[12]  Finally, Plaintiff

points to Defendant's documentation of disciplinary "write-ups" as inconsistent with her sworn

---

[12] Plaintiff also re-urges her argument that Mr. Cury treated women more harshly than men.
However, because nothing suggests Mr. Cury had any input into the termination decision or the
decision to require a doctor's note, one cannot infer a discriminatory motive for these decisions from
any conduct by Mr. Cury.

testimony that she was unaware of an attendance problem or any performance issues prior to her termination; she urges an inference that these documents have been falsified and show a nefarious motive.

Upon careful review of the record, the Court concludes Plaintiff has raised genuine disputes of material facts regarding whether Defendant's stated reason for her termination was a pretext for intentional discrimination and retaliation.  In reaching this conclusion, the Court is constrained by Rule 56 to accept all reasonable inferences that may be drawn in Plaintiff's favor, regardless whether the Court would make the same inferences.  Viewing the record in this way, the Court observes facts from which rational jurors could find that Defendant seized on Plaintiff's excessive absences, which are not disputed, to manufacture a situation where Plaintiff would be subject to termination and replacement – either because she is female or because she was complaining of sexual harassment. In short, the Court finds the record evidence is sufficient, although minimally so, to create triable issues whether Defendant's reason for Plaintiff's termination is pretextual and whether Plaintiff's gender and protected activity were significant factors in the decision.  Therefore, summary judgment is inappropriate on Plaintiff's claims of gender discrimination and retaliation.

## F.    Pattern or Practice Claim

Defendant does not address in its motion the allegations of the Complaint that "Defendant engaged in a pattern and practice of sex discrimination."  *See* Compl. [Doc. 1] at 5, ¶ 5.5.  Plaintiff made this allegation, and used this label for Count I of the Complaint, regarding her claim of hostile work environment sexual harassment.  However, in opposition to summary judgment, Plaintiff argues as a separate proposition of her brief that Defendant's failure to address a "pattern or practice claim" should result in a denial of summary judgment on such a claim.  Defendant replies to this argument that its showing of a "nondiscriminatory rationale" for Plaintiff's termination entitles it

14

to summary judgment on this claim as well.  *See* Def.'s Reply Br. [Doc. 18] at 10 (quoting *Johnson v. Transportation Agency*, 480 U.S. 616, 626-27 (1987)).

A more fundamental problem exists with Plaintiff's purported "pattern or practice" claim. This term refers to "a particular kind of discrimination claim alleging an employer engaged in systemic discrimination against a protected class.  *See Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 359-62, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977) (discussing method of proof applicable to pattern-or-practice cases brought by the government or a class of plaintiffs)."  *Jones v. United Parcel Serv., Inc.*, 502 F.3d 1176, 1187-88 (10th Cir. 2007).  Although the Tenth Circuit has not addressed the issue directly, it has noted that "other circuits have held that this method of proof is not available in a private, non-class suit."  *Id*. at 1188 n.5 (citing cases).  When such a claim is properly presented, an individual plaintiff's claim of discrimination is a "second stage" issue that must be preceded by proof of the existence of a discriminatory procedure or policy.  *See Thiessen v. General Elec. Capital Corp.*, 267 F.3d 1095, 1106 (10th Cir. 2001).  The court of appeals has cautioned:  "Until the first stage is resolved, we question whether it is proper for a court to consider summary judgment motions regarding second stage issues (i.e., whether individual plaintiffs are entitled to relief)."  *Id*. at 1109.

A review of the Complaint in this case leads the Court to question whether a true "pattern or practice" claim is asserted.  If it were, there would also be a question whether the Court has subject matter jurisdiction to decide it.  *See Jones*, 502 F.3d at 1188 (stating that, if such a claim were raised, it would be subject to requirement of administrative exhaustion).[13]  Accordingly, the Court declines to address this claim on the record presented.

---

[13]  "[E]xhaustion of administrative remedies is a jurisdictional prerequisite to suit under Title VII."  *Sizova v. National Inst. of Standards & Tech.*, 282 F.3d 1320, 1325 (10th Cir. 2002).

**CONCLUSION**

For these reasons, Defendant's Motion for Summary Judgment [Doc. 16] is GRANTED in part and DENIED in part.  Defendant is entitled to a summary judgment only on Plaintiff's claim of sexual harassment.  Plaintiff's claims of gender discrimination and retaliation in the termination of her employment, and any Title VII pattern or practice claim, remain.  Plaintiff's age discrimination claims have been abandoned.[14]

IT IS SO ORDERED this 25th  day of March, 2008.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE

---

[14]  *See supra* note 1.